NEW-YORK,
May, 18.;..

MILLER *vs.* WATSON.

Miller
v.
Watson.

An action of *assumpsit* may be maintained on a *promise* by a grantor to re-
fund the consideration money and interest of same of lands sold by him,
notwithstanding a covenant of warranty, where the grantor, on being in-
formed that actions of ejectment had been commenced against his gran-
tees by a third person, admitted the title to be in such claimant, desired
the persons in possession to surrender the possessions to him, agreed to
refund the consideration money paid to him, with the interest thereof, and
instructed his agent to pay to his grantees the amount due each, as soon
as in funds, on shewing a compliance with the condition of the promise,
viz. the surrender of the premises.

Such action may be maintained by a *grantee*, who had conveyed his interest
in the land to third persons, with covenants of seisin and warranty, if it
appears that such third persons have, in pursuance of the request of the
original grantor, surrendered the possession of the land conveyed to them
to the claimant, and that their claims upon their grantor have been satis-
fied by a re-payment of the monies advanced to him.

In such case, however, the plaintiff must declare on the *special contract*, and
is not entitled to recover under the common money counts or an *insimul
computassent.*

After such admission of the title of the claimant, the grantor is estoped from
shewing title in himself.

THIS was an action of assumpsit, tried at the the Seneca cir-
cuit in June, 1827, before the Hon. E. T. THROOP, then one
of the circuit judges. The declaration contained the usual
money counts, and a count on an *insimul computassent.*

In 1810 the defendant sold 107 acres of land, part of a
lot in the military tract, to the plaintiff, for the consideration
of $655, and executed to him a warranty deed. He sold
the remainder of the lot to other persons. In 1816 suits
were commenced by Samuel Dexter for the recovery of the
lot against the persons in possession, who, and amongst them
the plaintiff, called upon the defendant in relation to the same.
The defendant told them that he had been unfortunate in
losing the case with Dexter, and knew no other way than
to pay back to those to whom he had sold, the money which
he had received of them, and the interest. He wished the
settlers on the land to surrender the possession. He made
a statement of the monies received by him from the several
purchasers, and calculated the interest upon the same up to

the 15th July, 1816. The amount received of the plaintiff, according to this statement, was $824,72, and the interest amounted to $202,13. The defendant wrote a letter to his agent residing at Auburn, directing him to pay the plaintiff and the other purchasers of the lot the amount due each, as stated by him, out of his funds, as fast as he should receive them. At the time of this negociation, two persons of the names of J. Stuart and P. Wyckoff were in possession of the land sold by the defendant to the plaintiff, and against them the ejectments were brought. They purchased of the plaintiff in 1812, each taking a moiety of the land conveyed to the plaintiff. The deeds to them contained covenants of seisin and warranty, and the consideration expressed in each was $645. In October, 1816, Stewart and Wyckoff agreed with one Gilbert Stewart, an agent of Dexter, to surrender their possessions and to take title under Dexter. They then admitted that the plaintiff had refunded to them all the monies they had paid him on account of the land purchased from him. (This evidence was objected to, but received by the judge.) The plaintiff proved by one witness that he gave his note to Stewart for $150, being the amount of money received from him ; and by another that he made the last payment due Wyckoff for monies paid the plaintiff, and took up the plaintiff's note, and that Wyckoff then said that was all that was due from the plaintiff. Wyckoff, at the time of the trial, was in possession of the land under Dexter's title. He had been intoxicated for several weeks before the trial, and was not fit to appear in court, and Stewart had removed to Michigan.

The counsel for the defendant insisted that the plaintiff was not entitled to sustain his action on the promise of the defendant, the foundation of which was his covenant of warranty, until he shewed himself repossessed of his interest in that covenant, by satisfying his own covenants entered into with J. Stewart and P. Wickoff. The judge ruled that he had sufficiently done so ; to which decision the defendant excepted. The defendant then offered to prove a good and valid title in himself at the time of his deed to the plaintiff, and for that purpose offered in evidence sundry conveyan-

ces, which evidence was rejected by the judge, he holding the defendant concluded by his admissions. The defendant next offered in evidence a warranty deed of the whole premises sold by the defendant to the plaintiff, from *Gilbert Stewart* and wife to P. Wyckoff, bearing date in October, 1816, for the consideration of $4,303; which was also rejected by the judge. The defendant then contended that the plaintiff was not entitled to recover in this form of action; that his remedy, if any, was on the covenant in his deed: and, at all events, that interest on the money paid ought not to commence previous to the surrender of the possession of the land. The judge decided that the action was sustainable; that the plaintiff was entitled to recover the money paid, and interest thereon from the time of payment. The defendant excepted. The jury found for the plaintiff $1672,09, allowing interest from the time of the payment. The defendant moved for a new trial.

*H. Bleecker & D. Cady*, for defendant.

*J. A. Collier*, for plaintiff.

*By the Court,* SAVAGE, Ch. J. This cause is before us for the third time on a motion for a new trial. When it first came up, it appeared that the defendant had sold and conveyed with warranty to the plaintiff, a certain lot of land for which the plaintiff had paid; that subsequently an action of ejectment had been brought against the plaintiff by Samuel Dexter, and the defendant admitted that his title had failed; stated an account of what would be due to the plaintiff, being the principal and interest paid by him, which he, the defendant promised to pay. On this evidence, the plaintiff recovered at the circuit. The verdict was set aside on two grounds, 1. That the promise of the defendant was to do the same thing, to the performance of which he was bound by his covenant of warranty, provided the plaintiff had been evicted; 2. That if an action upon the promise could be sustained, yet no good consideration was shown for the promise, there being no legal eviction, nor any thing equivalent to an eviction. (5 Cowen, 195.)

The cause was tried again at the circuit, when the plaintiff produced the same evidence as upon the first trial, and offered to prove the further fact, that, at the request of the defendant, the plaintiff gave up all defence to the ejectment by Dexter, and surrendered the possession to him. On this evidence and offer, the plaintiff was nonsuited. (7 Cowen, 39.) The nonsuit was set aside on the ground that the evidence offered shewed a consideration for the promise of the defendant; and it was observed that on the first trial there was no evidence of any injury sustained by the plaintiff, whereas the evidence offered would shew the fact that the plaintiff, by reason of the failure of the defendant's title, and by reason of his request to the plaintiff to surrender the possession to the plaintiff in the ejectment, and thereby save costs, had lost the possession of the lot. This was an injury to the plaintiff and a benefit to the defendant, upon the assumption of failure of title in the defendant. This shewed a new consideration, and a new contract between the parties; whereas the case at first presented was merely a promise to perform the original covenant.

So far as facts were shewn or offered in evidence on the two first trials, I consider the law of this case settled by the two former decisions. It must therefore be considered as settled, 1. That the basis of the liability of the defendant in his covenant of warranty in his deed to the plaintiff; 2. That no recovery could be had directly upon the covenant without an eviction; 3. That any promise simply to perform the covenant, is not the ground of an action; but 4. That a promise to pay the purchase money and interest, founded upon a new consideration passing between the parties, though growing out of the original transaction, is a valid promise, and may be enforced in this form of action. That by a surrender of the possession to the plaintiff in ejectment, the plaintiff in this cause was damnified by the loss of the possession, and by the loss of his right of action upon his covenant; and that the defendant was benefitted by saving the accumulation of costs; that there was therefore a sufficient consideration to support a promise to repay the purchase money and interest.

On the last trial, however, some new facts were shewn, and several new questions arise which have not been before raised or discussed. Among them are the following : Was there in fact any promise made ? Has the condition been performed by the plaintiff? Was it in the power of the plaintiff to comply with the condition? Is the defendant relieved from liability on his covenant? Had the plaintiff any interest in the subject of the promise, and is it shewn by competent testimony? Should not the defendant be permitted to shew title to the land sold ? Can the plaintiff recover on the common counts, or must he resort to the special agreement?

From the testimony on the part of the plaintiff, there seems reason to believe that the defendant was under an impression (perhaps an erroneous one) that his title had failed, and that Dexter would recover in the ejectment suits which he had commenced. He knew that to contest those suits without title would only be increasing his own loss, and therefore said he knew no other way than to pay back the money and interest. He instructed those to whom he had sold to surrender the premises and call on his agent and receive the money and interest. Here was a distinct admission that he had received money upon a consideration which had failed, and that he was liable to refund it with interest. But there seems also to have been an understanding that he was not to pay the money unless the possession was surrendered to Dexter. The fair explanation of this is, that if the possession was not surrendered, Dexter would evict the persons in possession, and then the defendant would be liable on his covenant of warranty. It could not have been the defendant's intention to pay the money and still remain in a situation in which he might be prosecuted on his covenant. The surrender, therefore, was a condition precedent to the receipt of the money. Directions were given to the agent of the defendant corresponding with this arrangement. It is said that here was a particular fund out of which the plaintiff was to be paid. I do not understand that the defendant's liability depended upon the fact whether the agent ever had sufficient funds in his hands. The defendant might have prevented those funds ever coming into his hands by countermanding

his authority to receive them. I understand the direction given to the agent merely as a mode of payment convenient to both parties, but having no connection with the liability of the defendant to pay.

Has the plaintiff surrendered the possession? He has done all in his power to effect it, and the persons in possession have surrendered. But it is said they took title from G. Stewart and wife, and did not take Dexter's title. I apprehend the defendant cannot be affected by the arrangement between the agent of Dexter and the settlers on the land. If they surrendered up the possession to Dexter, the suits were of course discontinued; no eviction could take place, and no recourse could be had against the defendant on his covenant. If this object was secured to the defendant, it seems to me he was not concerned to know whether the settlers received a valid title or not. If, indeed, Stewart's conveyance to them was not under Dexter's title, Dexter might still evict the persons in possession under the defendant in this cause, and they might possibly harrass him with suits on the covenant of warranty; but the payment of principal and interest under the contract on which this suit is brought would be a perfect defence to any such action, if the contract had been made with them and they had received the money. This brings me to the enquiry whether a recovery in this suit will relieve the defendant from his covenants.

In 1812, the plaintiff sold the lot purchased of the defendant to P. Wyckoff and J. Stewart, and conveyed to them with covenants of seisin and warranty. The suits brought by Dexter were against them and not the plaintiff. Had Dexter recovered against them and evicted them, they might have sued the plaintiff or defendant. Had they sued the plaintiff and recovered from him their damages, the plaintiff would then be in a situation to prosecute the defendant on his covenant; but at the time when the promise of the defendant was made, Wyckoff and J. Stewart were the assignees of the defendant's covenant, and they only, in case of eviction, could in the first instance prosecute the defendant upon his covenant. In the action of covenant, the plaintiff must have shewn the re-payment of the money paid him by Wyckoff

NEW-YORK.
May, 1830.

Miller
v.
Watson.

and Stewart, in order to have become reinstated with the right to prosecute upon the covenant, which he had assigned to Wyckoff and Stewart by selling and conveying to them the land. In this action, it became necessary to make the same proof, in order to shew that the plaintiff had been damnified by a compliance with the condition which formed the consideration of the defendant's promise. Such proof was given, but it was objected to. It consisted principally of the declarations of Wyckoff and Stewart. One witness states that he paid Wyckoff the last payment due him for monies paid by him for the land, and took up the plaintiff's note, and Wyckoff told him that was all which was due him from the plaintiff. It was also shewn that the plaintiff gave his note to J. Stewart for $150, being the amount paid by him for the land: this note was executed when the land was surrendered to Dexter's agent; there is no evidence of its payment but Stewart's declarations. It is contended by the the the defendant's counsel that the evidence was insufficient. Wyckoff and J. Stewart were competent witnesses, and of course their simple declarations were not testimony, but their acts were proper evidence. By surrendering the possession to the agent of Dexter, did they not waive any right which they might have had after eviction to prosecute the defendant as assignee of his convenant? And by the plaintiff's giving his note for the repayment of the money they had paid him, does he not shew a sufficient damnification to enable him to maintain the action? He shews not only the giving his note to Stewart, but the payment and taking up of his note to Wyckoff. Benefit to the party promising, or loss to the person to whom the promise is made, constitute a good consideration. (5 *Johns. R.* 277.) Here was a benefit to the defendant, a saving of the costs of the ejectment suit and of the costs of a suit upon his convenant of warranty. I am assuming now what was conceded by the defendant, that his title had failed. If, therefore, the plaintiff shews a benefit to the defendant, he shews a consideration for the promise, even though he fails to shew a loss to himself. He has, however, shewn a loss to himself by re-payment to Wyckoff of the amount for which he gave his note. What that was does not appear. The amount of his note to

Stewart was $150; so that even if he has not pay that amount, it is evident the plaintiff has lost the whole value of the lot, with the exception of $150, if that is not paid. The amount to be recovered in this action does not depend on the amount of the plaintiff's loss, (for the lot may have been worth more or less than he gave for it,) but upon the amount paid by the plaintiff to the defendant.

It is objected that there was no surrender in writing, and that therefore the case is within the statute of frauds. It is not stated how the surrender was made, nor was any objection as to his point taken at the trial ; it is therefore now too late. Had the objection been raised on the trial, it might have been obviated by proof.

The judge was correct in refusing evidence of the defendant's title. He had admitted his failure of title, and requested the plaintiff to surrender the possession to Dexter, who he admitted had title. He ought not now to be permitted to shew that he was mistaken in his former admission. In consequence of that admission and request to surrender, and promise to pay, the plaintiff had given up the possession of the land, had put himself in a situation not to contest Dexter's title, and had deprived himself of his remedy upon his covenant ; and if the defendant can thus defeat this action, the plaintiff is remediless. The defendant, it seems to me, is estopped to say that he had title, when he made the admission that he had not title. It is true, there are cases where a parol admission of want of title is not conclusive. When, for instance, the title is the issue on trial, and title has been shewn in one party, it shall not be shewn out of him by parol admission. Such however is not this case.

It it objected also that the plaintiff was not a settler on the lot, and therefore not embraced within the terms of the contract, and therefore also could not surrender. It is clearly proved that the contract was made with the plaintiff by his agent, and that the surrender was made ; and whether it was made by the plaintiff in person, or he procured those who held under him to make it, was immaterial to the defendant. It was done by the plaintiff's procurement, and the benefit to the defendant was the same as though the plaintiff had been the actual occupant.

The defendant's counsel insist, that even if the facts in the

case warrant a recovery in assnmpsit, still the plaintiff cannot recover upon the common counts, but must declare upon the special contract. This point was not raised nor decided when this cause was formerly before us. The count for money had and received is proper where money has been paid upon a contract which has been put an end to or rescinded. But if the contract continue open, as it is technically termed, the plaintiff can only recover damages, and must declare specially. (1 Chitty's P. 342.) "Where there is a special contract," says Lord Mansfield in *Weston* v. *Downes*, (Dough. 24,) "the defendant ought to have notice by the declaration that he is sued upon that contract." The same point had been previously so decided in *Power* v. *Wells*, (Cowp. 818.) In the latter case the plaintiff attempted to recover money paid by him for a horse warranted to be sound, but which proved to be unsound. He offered to return the horse, and declared for money had and received. The court held the action would not lie, and that the plaintiff must prosecute on the warranty. The case of *Weston* v. *Downes* was an action for the money paid for a pair of coach horses, which the plaintiff had the privilege of returning within a month if they did not suit. He offered to return the horses within the time, but the defendant refused to receive them. The plaintiff was nonsuited, on the ground that he should have prosecuted on the contract, which was not rescinded, but open in full force. In *Towns* v. *Barret*, (1 T. R. 133,) the action was sustained on the ground that the contract was at an end. The plaintiff had purchased a chaise, to be returned if it did not suit. It was returned, and the court held the contract ended. The same principle has been frequently decided by this court. In *Clark* v. *Smith*, (14 Johns. R. 326,) the language of the court is, "Whenever the special contract is still subsisting, and no act done or omitted by the one party, which will authorize the other to consider the contract rescinded, the remedy must be on the special contract; and this principle will be found to run through all the cases on this subject." In that case the plaintiff declared on the special contract as well as on the common count, but

on the trial could not prove the special contract: and this court held he could not give evidence under the common count, having shewn that there was a written contract under which the services were rendered. In *Jennings* v. *Camp*, (13 Johns. R. 96,) Spencer, justice, says there are two principles which are considered well established, precluding the plaintiff below from recovering: First, the contract is open between the parties and still in force ; the defendant below has done no act to dissolve or rescind it ; and it was decided, (12 Johns. R. 274,) upon a review of all the cases, that if the special agreement was still in force, the plaintiff could not resort to the general counts. The same point will be found in 4 Bos. & Pul. 354, 10 Johns. R. 36, 7 id. 133, and 5 id. 87.

In *Tuttle* v. *Mayo*, (7 Johns. R. 134,) this rule is adopted from the English courts: " Where a party declares, on a special agreement seeking to recover thereon, but fails altogether, he may recover on a general count, if the case be such that, if there had been no special contract, he might still have recovered." That principle, however, cannot aid the plaintiff in this case. Here the special contract is in force, and the plaintiff attempts to recover upon it under the general count. He cannot, in this case, recover upon any implied contract: for there is none such. There has not been any money paid by him on this contract, nor any act by the defendant tantamount to a rescission of it. It is a plain case within the rule, and the special contract should have been declared on.

It is supposed however, by the plaintiff's counsel, that he is entitled to recover upon the count of *an account stated*, and the case of *Foster* v. *Allanson*, (2 T. R. 479,) is relied on. In that case the parties had been partners, and dissolved sooner than was contemplated by their articles, which were under seal ; upon the dissolution they stated an account, and the defendant promised to pay the balance. The court held that the action was well brought in assumpsit, and that it was not necessary to resort to the covenant ; and Buller, justice, states one question to be, " whether a previous partnership being dissolved and an account settled is, or is not,

in point of law, a sufficient consideration for a promise. I have no difficulty (he observes) in saying that it is," and adds, here was an express promise to pay the balance. In the case before us, there was no such express promise to pay any balance, the contract was executory; upon the plaintiff's surrendering the possession of the land, the defendant was to repay the money he had received and interest. He did not state an account, and promise absolutely to pay it as did the defendant in the case of *Foster* v. *Allanson*. From the very nature of the contract, there could be no such thing as an account stated: there was no matter of account between the parties; the contract entered into was executory, and it depended upon the plaintiff's performance of a condition whether the defendant would be liable upon his promise. The defendant made a statement from his book of the amount received from the plaintiff, and calculated the interest up to the time when the contract was made; but he did not promise to pay the sum with interest, but to pay what he had received with interest. If, therefore, the plaintiff could recover on this count, the verdict is for too much. But upon principles which seem to be well settled, the plaintiff is bound to set forth the special contract in his declaration, and cannot recover as for money had and received. Without an express promise, there is no pretence that the plaintiff has any claim only upon the covenant of waranty. It is not a case therefore for a recovery upon the common counts. I am of opinion that the plaintiff cannot recover under his declaration, and that there should be a new trial, with costs to abide the event.