# SUPREME COURT.

## WHEELER agt. WHEEDON AND OTHERS.
## DUNNING agt. THE SAME.

Where judgment creditors filed their complaint in the nature of a creditor's bill, against the judgment debtors, after a general assignment made by the latter for the benefit of creditors, to reach the effects of the judgment debtors, and also a debt due to them from one of the assignees, who was a preferred creditor and a party defendant—the other assignees not being made parties—the suit not being in hostility to, but in affirmance of the assignment.—And judgment rendered for plaintiffs and a receiver appointed.

And where other junior judgment creditors subsequently filed their complaint against the judgment debtors and their assignees, for the purpose of setting aside the assignment as fraudulent and void, &c., and judgment was accordingly rendered for the plaintiffs, declaring the assignment fraudulent and void as against creditors, and appointing a receiver, &c.

*Held,* that the receiver in the former suit could not be allowed to open the decree and come in and 'defend in the latter suit, by setting up a prior equity in favor of the plaintiffs in the former suit, and claiming to be first paid out of the funds in the hands of the receiver in the latter suit.

Because, it was not necessary to make the plaintiffs in the first suit parties to the

latter, as the latter claimed in hostility to the assignment, and the former in affirmance of it, therefore a defence by the assignees was a defence by all the creditors, whether parties or not, who were to be regarded as represented by their trustees and in privity with them. Consequently, there was no prior equity, by creditors claiming a fund, under an assignment sought to be affirmed by them, placed in the hands of a receiver by a decree declaring that assignment void.

*Washington General Term, May,* 1853. HAND, CADY, and ALLEN, Justices.

This is an application for an order that Mansfield T. Walworth, as receiver of the effects of Royal C. Wheedon, may, by an amendment, be brought in as a party in the above actions, and may defend the same and claim and interpose his priority to the money and effects in the hands of A. Bockes, Esq., the receiver appointed therein.

The petition states that the actions were commenced against the Wheedons as judgment debtors of the complainants, after executions returned unsatisfied, and against the other defendants as assignees in trust of the said judgment debtors, to pay certain debts, which assignment was alleged to be fraudulent and void. That the suits were commenced in July, 1852, and were at issue and tried before W. T. Odell, Esq., referee in each cause, on the 9th of November, 1852, and a judgment rendered on his report on the 13th of November, and notice of the judgment served on the 15th of November. That the referee set aside the assignment mentioned in the pleadings, and ordered the money in the hands of the assignees to be applied on the plaintiffs' judgments respectively against the Wheedons, and judgment was also entered appointing Judge Bockes, the plaintiff's attorney, receiver in each cause. That said referee set aside the assignment, on the ground that it was fraudulent and void, and ordered the effects and avails in the hands of the assignees to be paid over to the receiver, who has received, or is about to receive them. That Dunning's judgment was obtained on the 5th of Feb. 1852, and Wheeler's on the 10th of Feb. 1852.

That on, or about the 1st of January, 1852, John B. Spelman, Alexander Frazer, and John W. Perigo, being judgment cred-

itors of Coggshall, Royal C. and James Wheedon, on a judgment obtained against them in this court in February, 1851, filed a complaint in the nature of a creditor's bill, to reach the property and effects of the two Wheedons, which they were unable to reach on execution, in which the three Wheedons and Wm. Gearn were defendants. That the Wheedons did not appear or put in any answer, but Gearn appeared and answered. The object of the suit was to reach the effects of the Wheedons wherever situated, and to reach a debt due to them from Gearn. That the issue as to Gearn was tried before a referee on the 1st of November, 1852, who has made a report in favor of the plaintiffs, on which judgment was rendered against the Wheedons for $424.13, besides costs, and that they severally assign to the receiver all their interest in the assignment, which report has been filed and judgment entered thereon in the clerk's office of Saratoga county. That on or about the 23d of March, 1852, John T. Wentworth, Esq., was duly appointed a receiver in the last suit, of all the debts, property, equitable interests and rights of the Wheedons, or either of them, with the usual powers of receivers, and the Wheedon's were directed to deliver over and assign to the receiver all such property on oath, to abide the judgment to be recovered in said action. That the receiver filed the requisite security and became entitled to enter upon the duties of his office on the day last aforesaid, but shortly afterward removed to the state of Illinois, and the petitioner was duly substituted as such receiver on or about the 8th of November, 1852, with the same powers, and filed the requisite security, and became entitled to act as such receiver. That the assignment mentioned in the causes above entitled, and therein sought to be avoided, is the same as mentioned in the Spelman suit, and therein sought to be affirmed, and the property covered by it is the same, and consists of real and personal estate. That the petitioner as such receiver, though he has received no property, insists that he is entitled to sufficient of the personal estate, mentioned in the assignment, to pay the debt of the plaintiff in the Spelman suit, and that for the purpose of determining the priority of plaintiff's claims in

each of said suits, it is necessary that he should be made a party to the actions above entitled. That the petitioner knew nothing of the suits in favor of Wheeler and Dunning, until after judgments were entered therein as aforesaid, and has not had time to prepare papers for this motion until now. That the judgment in the Spelman suit was obtained upon a note, the payment of which was preferred in the said assignment in trust. That he is fearful that Bockes as receiver will apply the moneys and effects in the hands of said assignees in trust to the payment of the plaintiffs' judgments in the suits of Wheeler and Dunning, unless restrained by order of this court. That he has requested Bockes to allow him to come in as a party to these suits, but he declined. The petition prays for an order directing the petitioner to be made a party to the suits and be permitted to claim and prove his priority of interest as such receiver in the effects in the hands of the assignees in trust, or in the hands of said Bockes as such receiver, and interpose such defences as he may be advised, so that a complete determination of the matters involved in said suits may be had, or for such relief as the court may grant.

The answering affidavit states, that the suits were commenced on the 13th of May, 1852. That the only funds expected were $800 or $1000 in the hands of Ingerson and Prior, two of the assignees. That none of the defendants appeared except the assignees, who answered by their attorney, B. C. Thayer, Esq. That Bockes, as receiver, received from Ingerson and Prior $542.64, and discharged the assignees. That the receiver, Judge Bockes, has been at an expense of $50 in prosecuting the suits, which were defended with great pertinacity. That Gearn, one of the assignees, was the father-in-law of the assignors, and was made a principal preferred creditor by the terms of the assignment, and received from the property of the assignors about the sum of $3000. That no part of the property and effects received by him have been obtained in these actions, and only the balance above stated has been received by Bockes. That a few days before the hearing of the causes, Gearn absconded, having converted nearly all his property into

Wheeler agt. Wheedon and others.

cash, and taking with him from $4,000 to $7,000. That he has not been heard of since, and his attorneys have attacked the small remnant of his property, the avails of which will not satisfy their demands. That the Spelman action was commenced on the 1st day of December, 1851, by B. C. Thayer, as attorney for the plaintiff, and was put at issue on the 27th of May, 1852. That the complaint contains no allegation of fraud in the assignment, nor are the assignees made parties thereto, nor does the complaint ask to set aside the assignment, but proceeds on the assumption of its validity. That in April, 1852, the said assignees had a meeting for the purpose of distributing the funds under the assignment, and Thayer, as attorney for Spelman & Co., appeared, and claimed a dividend, on the Spelman demand. That the assignees made no dividend, and these suits were shortly after commenced. That when the judgments in these causes were recovered, and when the money was paid over to Bockes, he was not aware that the receiver in the Spelman case claimed the funds, or did claim them until he demanded them on the 23d of November, 1852. That finding, on examining the pleadings in that case that the assignees were not made parties to the suit, and that the assignment was not attacked, nor the funds in the hands of the assignees claimed, and having in his hands no funds derived from the defendants in the suit in which he was receiver, nor from either of these defendants, he, Bockes, declined to surrender the money. That notwithstanding Thayer was the attorney in the Spelman suit, yet he defended as the attorney for the assignees to prevent the funds from being reached by the creditors. That the actions above entitled are the first and the only actions wherein the assignees are made parties.

W. L. F. WARREN, *for Petitioner.*
A. BOCKES, *for Plaintiffs.*

By the Court—C. L. ALLEN, Justice. The plaintiffs in the Spelman judgment filed their complaint in the nature of a creditor's bill against the Wheedons and William Gearn, in Jan. 1852, to reach the effects of the Wheedons, who were the judgment

debtors, and a debt supposed to be due from Gearn to them, and to reach funds received by him as a preferred creditor in an assignment before then, executed by the Wheedons, to Gearn and others who were not made parties. The plaintiffs in the two actions herein entitled on the 13th day of May, 1852, each filed complaints against the three Wheedons, and also William C. Wheedon, and others judgment debtors, and Gearn; and included in their suit Asa Ingerson and William Prior, who, with Gearn, were the assignees in the assignment alluded to; claiming not only to reach the effects of the Wheedons, as judgment debtors, but also alleging that the assignment was fraudulent and void as to creditors, and praying that it might be set aside. In point of time, then, the plaintiffs in the Spelman suit filed their complaint *first*, and under ordinary circumstances would be entitled to a priority as to the equitable interests of the judgment debtors, even although their judgment might be junior to the judgments of the plaintiffs who filed their bills last. This, however, is not the case here. The lien is acquired by the filing of the complaint. It operates as an attachment of property which cannot be levied on at law. It gives to the vigilant creditor a right to a priority in payment, and the creditor filing a second complaint will have the second lien. (2 *Hoff. Pr.* 116; Corning agt. White, 2 *Paige*, 567.)

If an assignment is made after the commencement of the suit it gives to the assignees a right to the surplus after payment of the plaintiffs' debt. The plaintiffs in the Spelman suit sought to affirm the assignment, which bears date the 25th of March, 1850, and is executed by Royal C. Wheedon and James W. Wheedon, as co-partners, to Prior, Ingerson, and Gearn, and assigns and conveys real as well as personal estate. It creates Gearn the principal preferred creditor and places him in the first class, and also prefers Coggshall Wheedon, for certain amounts, and places him among others in the second class. The plaintiffs complaint sought to reach, among other things, Coggshall Wheedon's preferred interest in the assignment. The co-assignees of Gearn were not made parties to that suit.

If the assignment was a valid one, it passed all the property of the assignors, subject to the liens on the real estate acquired by the several judgments previous to its execution, to be distributed according to its directions. Having been attacked, however, in the Wheeler and Dunning suits, a trial was had before a referee, who has decided it to be fraudulent and void as against the creditors of the assignors; and Judge Bockes was duly appointed receiver in those two suits. The assignment being set aside, so far as the real estate is concerned, the creditors would perhaps be placed upon their original footing, and the oldest judgment would be entitled to have the preference, (4 *Paige*, 42,) unless the oldest had dispensed with their liens by affirming, or agreeing to affirm, the assignment, their judgment having been recovered after its execution and delivery.

The receiver in the Spelman suit was appointed in March, 1852, and having removed to the state of Illinois, the petitioner was appointed in his place and duly qualified. When his appointment was completed, the whole of the equitable interests and effects of the defendants in that suit was vested in him, subject to the order, without an assignment; and so far as the personal property was concerned, he could have maintained an action for the property belonging to them, without showing an assignment. Wilson agt. Allen, (6 *Barb*. 542.) And if he is entitled by priority, or if the plaintiffs in the Spelman judgment are entitled by priority, to have their debt first paid out of the funds in the hands of Judge Bockes, who was afterward appointed receiver in the other suits, he can apply by proper petition to the court for an order for that purpose, without the necessity and expense of being brought in as a party to those suits, and interposing a defence there. The decrees in these suits require Bockes to pay according to the rights and priorities of all creditors. The words are, "that he will pay and satisfy the Wheeler and Dunning demands," subject to "the equitable rights of the creditors of said Royal and James Wheedon, who have commenced creditor's suits." This view would dispose of the present motion, leaving the petitioner to make the proper application to the court; but the petitioner

asks for general relief, and perhaps a further consideration of the questions presented may save the necessity of another motion. What defence then I ask would the petitioner be entitled to, or does he seek to set up there, which the assignees have not already made, and which has been overruled? I do not understand that it was necessary for Wheeler and Dunning to have made the plaintiffs in the Spelman suit parties to their suit, where they claimed in hostility to the assignment. A defence by the assignees in such a case is a defence by the *cestui que trust*.

In Rogers agt. Rogers, (3 *Paige*, 379,) the chancellor said, " as a general rule, the *cestui que trust*, as well as the trustee, must be parties, especially where the object is to enforce a claim consistent with the validity of the trust; but where the complainant claims in opposition to the assignment or deed of trust, and seeks to set the same aside on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee, who is the holder of the legal estate in the property without joining the *cestui que trust*," (*and see* 4 *Paige*, 23.)

In Russell agt. Losher, (4 *Barb.* 232,) these cases were cited and approved, and the court said that where a defence was interposed by the assignees, it was a defence by all the creditors, whether parties or not, who are to be regarded as represented by their trustees, and in privity with them. They are only bound, however, by the *bona fide* acts of the assignees; and a creditor not made a party, may be allowed to impeach a decree if he offers to prove and can prove that it was fraudulently obtained. But unless he can show that he is not a stranger to the decree, it may be used as evidence against him, and until he proves that it was improperly obtained, it is as conclusive upon him as upon the parties before the court when it was pronounced.

It is not pretended here but that the decree was fairly obtained, nor but that the assignees defended in good faith, and protected as far as they could the rights of all the creditors interested in the assignment. No appeal has been taken from the judgment of the referee, and by that judgment the assign-

ment has been set aside as fraudulent and void. The only ground on which this motion is based, as I understand it is, that the plaintiffs in the Spelman judgment have prior equities to the plaintiffs in these two causes, and are entitled to be first paid out of the fund in the hands of the receiver in those suits.

What good reason, therefore, is there for opening the decree and for letting in the petitioner as receiver in the Spelman suit? Does he ask to defend on the ground that the decree was improperly obtained? No such pretense is set up in his petition. He does indeed proceed upon the assumption that the assignment was valid, and seeks to affirm it. This, on the part of the plaintiffs in the Spelman judgment he has a right to do, and as to *affirming* creditors, the assignment may be good. (5 *Paige*, 15 ; 6 *id.* 577 ; 13 *Wend.* 240.) But what right, as affirming creditors, have they more than the assignor himself to funds acquired under a decree pronouncing that assignment void, and directing the funds in the hands of the assignees, to the amount of $592.64, to be paid over into the hands of the plaintiffs' receiver. True, the decree declares the assignment to be void as against the *creditors* of Royal and James Whee-don; that the cases cited show that an assignment thus declared void, is not so as to creditors assenting to and affirming it by their acts or consent; they are then estopped from alleging any fraud, when, with a full knowledge of the facts, they have assented to it. In this case, the plaintiffs in the Spelman suit set up the assignment in their suit as a valid one, and seek to enforce payment of their debt out of funds secured to Cogg-shall Wheedon as a preferred creditor, and out of funds in part in the hands of Gearn, or paid into his hands as a preferred creditor by his co-assignees. The assignees were not made parties to the Spelman suit, nor is there any allegation or pretense that the assignment was fraudulent. True, Gearn, one of the assignees, was brought in, but not as an assignee. The claim was against him individually, to reach a fund which it was alleged he had received for the purpose of paying the Spelman debt, and which he had promised to pay on that consideration.

The plaintiffs in the Spelman suit by their decree acquired a lien on the equitable interests of all and each of the defend ants in their suit. Ingerson and Prior, two of the assignees, were not made parties to it, and all the fund received by Bockes came from them. Are they, or rather is the petitioner, then, entitled to claim a fund under an assignment which they seek to affirm, placed in the hands of a receiver in those two suits by a decree declaring that assignment void? It appears to me, .nat no such claim can be interposed. Suppose, as the petitioner seems to insist, that the assignment so far as the rights of those he represents are concerned should stand affirmed, then the assignees are bound to distribute the funds according to the directions in the assignment, and it does not appear that the plaintiffs in the Spelman suit are entitled to any *priority* to the fund in the hands of Bockes; and it would belong to the assignees to distribute according to the assignment. The plaintiffs in the Spelman suit being entitled to a pro rata share with many other creditors named in the second class of the assignment, they would acquire no lien by their suit, the assignment having been made before it was commenced.

It is true, if these creditors were standing in a different relation they would probably have acquired a priority of lien, having filed their complaint in due season. But if they had sought to annul the assignment, and had not taken the proper steps to secure a priority before the plaintiffs acquired their rights by filing their complaint and obtaining their decree, I do not see why they should be entitled to come in at this stage of the proceedings and under the peculiar circumstances in this case, and claim the benefits secured by more vigilant creditors, who have incurred the risk and expense of bringing their suits to a successful termination, and thus profit by the exertions of others. Such was not the decision in Edmeston agt. Lyde, (1 *Paige*, 637,) nor in any other case since. The chancellor in the case in 1 *Paige*, said, " it would be unjust that a creditor who has sustained all the risk and expense of bringing his suit to a successful termination should in the end be obliged to divide the avails with those who have slept upon their rights."

Wheeler agt. Wheedon and others.

It is true that they filed their complaint first, but it was in affirmance of the assignment. It is also true that the petitioner swears here that he knew nothing of the Wheeler and Dunning suits, until after they obtained their judgments. But it does not appear that Spelman and his co-plaintiffs were ignorant of these proceedings. The same attorney who defended against the Wheeler and Dunning suits prosecuted the Spelman suit, and it has been shown that they were parties, and defended the suits by their assignees. (4 *Wend.* 272; 4 *Paige*, 23; 6 *id.* 379.) And they do not pretend now that the decrees were fraudulently or improperly obtained.

But they seek, after having affirmed the assignment on their part, to avail themselves of the benefits secured by Wheeler and Dunning; that is, after having defended unsuccessfully by their assignees, in endeavoring to sustain the assignment, against the allegations of the plaintiffs in the suits which claim it to be fraudulent and void, they ask to be substituted in the place of those plaintiffs, and to receive the very fund which they have endeavored to keep from their hands, thus claiming the advantage of the success of their adversaries. In my judgment, this would not be equity, and would not be protecting the rights of the most vigilant creditors.

The decree in the Spelman suit was, that the defendants assign to the receiver (petitioner) all their interest in the assignment, and the petitioner says the plaintiffs claimed, among other things, the rights secured to Coggshall Wheedon in the assignment as a preferred creditor. But what rights has Coggshall Wheedon as against Wheeler and Dunning, or other creditors, as to whom the assignment has been decreed to be fraudulent and void? And what rights has Gearn, as against whom the plaintiffs had not even a judgment? Clearly none, as he cannot have acquired any as against their judgment. And what rights has he as against funds derived from Ingerson and Prior, who were not made parties to their suit? I cannot perceive that he has any. Wheeler and Dunning obtained a priority of lien on the trust funds under a fraudulent deed of trust. (10 *Paige*, 9; 1 *id.* 637; 2 *id.* 267.) And by their decrees all

other judgment creditors were bound. (4 *Barb.* 232; 4 *Paige*, 23; 6 *How.* 379.) The difficulty on the part of the petitioner lies in the fact, that the plaintiffs in the Spelman suit sought to affirm the assignment, and that they do not, therefore, stand in the same relation and are not entitled to the same priority which they would have obtained over Wheeler and Dunning by filing their complaint first, if it had been like theirs in hostility to the assignment. That having chosen to affirm the assignment, they placed themselves, so far as Wheeler and Dunning are concerned, on a footing with the assignees, and cannot first reap the benefits to which other creditors more vigilant, and who have elected to take a more successful course, have properly secured to themselves.

Motion denied, with $10 costs.