HANCOCK BROS. & CO. v. WOOTEN et al.

*Creditor's Bill—Lien—Parties.*

1. In an action brought to set aside a fraudulent assignment, the *cestuis que trust* are not necessary parties, and they will, in the absence of bad faith on the part of the assignee or trustee, be bound by his acts.

2. The *cestuis que trust,* however, may be made parties by the plaintiffs, or they may be permitted to come in and unite in the defence, or the Court may, upon proper cause shown by the assignee or trustee, at his instance, require their presence, but in no case will the death of all or any of the *cestuis que trust* be a legal cause of continuance, unless the assignee or trustee is not defending in good faith, or unless the Court is of the opinion that the ends of justice will be better subserved by the presence of the representatives.

3. Such an action may be brought by a single creditor, or as many as he may choose to unite with him, and is in the nature of a judgment creditor's bill, and the plaintiff or plaintiffs in such action acquire a preference by way of equitable lien upon both the legal and equitable assets of the debtor from the commencement thereof.

4. The Court cannot deprive them of this preference by the joinder of new parties or the consolidation of other actions or proceedings where it is necessary, in the interests of convenience and justice, to require such joinder, but the preferences or priorities of the various parties litigant will be preserved.

5. Such actions may be now maintained without precedent judgments and executions in all cases where they could, under the former practice, have been maintained after the obtaining of such judgments or the issuing of such executions.

6. Where several creditors united in setting aside a fraudulent assignment, and in the action obtained judgments for their claims, it was properly held that a preferred creditor, who did not participate in the fraud, but who failed to join the plaintiffs in their action and united with the assignee in defence of the fraudulent assignment, and who has never obtained a judgment, should not share *pro rata* with the plaintiffs, but that he should be postponed as to them.

7. This would, perhaps, be otherwise in the case of a general creditor's bill, where it is the duty of the Court to take a fund or estate in its custody and distribute it according to the respective interests of the persons entitled. In such cases it may be that a creditor who has endeavored to defeat the purposes of the action can, upon proper terms, be allowed to prove his claim and share equally with the others. .

8. Such a practice has no application to a judgment creditor's bill, where each creditor is entitled to reap the reward of his diligence.

9. Discussions of creditors' bills, preferences and practice by SHEP-HERD, J.

This was a CIVIL ACTION, tried before *Connor, J.*, at Spring Term, 1889, of the Superior Court of GREENE county.

Only so much of the facts will be repeated as are necessary to a proper understanding of the points made by the counsel, and the rulings of the Court thereupon.

On the 25th of December, 1880, W. J. Wooten and wife executed a deed of assignment, conveying certain real and personal property to W. A. Darden as Trustee. The personal property belonged to Wooten, and the real property belonged to Wooten and his wife. The deed was made to secure the creditors of the said Wooten and his brother Simeon J. Wooten, and the wife of the trustee was preferred as to certain alleged indebtedness, sufficient in amount, it was alleged, to exhaust the whole of the property. The plaintiffs, Hancock Bros. & Co., Leggett & Co., and certain other creditors, instituted this action in the Superior Court of Greene County, at Spring Term, 1887, against these defendants, for the purpose of recovering certain indebtedness alleged to be due them by the said W. J. Wooten. At the same term, there was pending an action, brought by Beaman, administrator, and Stevenson & Slingluff, against the said Wooten and the other defendants, for the purpose of recovering alleged indebtedness due them, and also for the purpose of having the said deed in trust declared void in so far as it affected them. In said action an attachment was issued,

which was levied upon the personal property included in said deed, which property was replevied by the trustee, Darden. About the same time various other actions were commenced by other creditors. In some of these attachments, were issued upon the said personal property, which property was also replevied by said Darden. Other creditors obtained judgments before Justices of the Peace, and the judgment creditors, having indemnified the Sheriff, caused him to sell a part of the said personal property. The proceeds of such sale were held by said Sheriff.

All of these actions were consolidated by order of Court, made at the same term, with the case of Hancock Bros. & Co. The order is as follows: "It appearing that the above action, pending in this Court, is a creditors' bill, and that there are creditors of defendant, W. J. Wooten, other than the plaintiffs, it is now ordered, on motion of defendant's counsel, that notice be issued by the Clerk of this Court to the following creditors of W. J. Wooten (naming the present parties plaintiff), to appear at the next term   *   *   *   and make themselves parties to this action. It is further ordered that publication of this notice be made for all creditors of said W. J. Wooten for six weeks successively in (a certain paper), to appear at next term of this Court and make themselves parties plaintiff."

At said Spring Term, 1887, Hancock Bros. & Co., and their co-plaintiffs, filed a complaint in "behalf of themselves and all other creditors of W. J. Wooten who may become parties." The action was thereafter conducted by all the creditors whose names appear in the proceedings, as plaintiff creditors. The defendants (Simeon J. Wooten inclusive) joined in an answer, denying all of the material allegations of the complaint.

When the cause was called for trial at Spring Term, 1888, the defendants suggested the death of Mrs. Julia Wooten, wife of defendant W. J. Wooten, and asked that

her representatives be made parties defendant. The Court, being of the opinion that upon her death her interest in the real estate in controversy vested in her husband, defendant W. J. Wooten, her heirs at law were not necessary parties, declined to make the order as requested, and the defendants excepted.

Without objection, the following issue was submitted to the jury:

" Was the deed of assignment of December 28, 1886, from defendant W. J. Wooten to defendant W. A. Darden, made with intent to hinder, delay and defraud the creditors of defendant W. J. Wooten?"

The jury responded in the affirmative Thereupon, it was ordered, by consent, that Darden, trustee, file a statement of all sums received by him by virtue of said deed of trust, and that he pay the same to W. C. Munroe, Esq., who was, in said order, appointed receiver. The Sheriff was also directed to account to and pay to said receiver all sums received by him from the sale of property levied upon and sold under execution or under any attachment, when, under the latter, the property attached was not replevied. At the same term (Spring Term, 1888) the Court made a decree adjudging the amounts due each of the plaintiffs (except in one or two instances where claims were referred, but which do not now appear to be the subject of controversy), and also declaring the said deed void. It also appearing to the Court, that a reference was necessary to ascertain facts essential to a final decree, John F. Bruton, Esq., was appointed referee, to report "the debts to which said moneys should be applied, the amount of said debts, and the *pro rata* share of each debt to be paid out of said fund, and the balance due them," &c. He was also required to ascertain other facts, which are not necessary to be here stated. He was also directed to report any other facts which he might

deem essential to a full adjustment of the matters in controversy.

Notice of appeal was given, and time allowed defendants to perfect their appeal. One of defendants' counsel thereupon notified plaintiffs, that the appeal would not be perfected, and the plaintiffs' counsel, acting upon such notice, proceeded to direct the receiver to pay out the funds which had come into his hands in the manner directed by said judgment, and to have the order of reference executed.

At the Spring Term, 1889, of the Superior Court of Greene County, the defendant Simeon Wooten filed his application to be permitted to file certain claims against W. J. Wooten. The plaintiffs filed an answer to said application. In respect to said application, the Court found the facts as set forth in Exhibit "E" in the record, and declined to permit the said defendant to file said claims and share in the distribution of the funds in the hands of the receiver. Defendant Simeon Wooten excepted.

The only other exception relates to the claim of Simeon J. Wooten. Only such parts of these exhibits as relate to the same will be mentioned here.

## EXHIBIT "E"

The facts found by the Court in regard to the application of Simeon Wooten to file claims set out in such application—

That the note of $848 was given by W. J. Wooten for usurious interest on a note of $10,000, to-wit, four per cent. in addition to the legal rate reserved in said note; also a small amount due Simeon Wooten by W. J. Wooten; that the note of $290, payable to Rountree & Co., was paid by Simeon Wooten as surety to W. J. Wooten; that the amount of $310.81 was paid Hardy & Bros. by Simeon Wooten as surety for W. J. Wooten.

That the said Simeon Wooten offered to file said claims before John F. Bruton, Esq., referee, but upon objection made by plaintiffs, was permitted to withdraw his application.

That on the 3d day of April, 1889, he filed with D. W. Patrick, Esq , Clerk of the Superior Court of Greene County, the paper-writing herein filed, and marked Exhibit "A."

That the said Simeon Wooten, preferred in the assignment made by said W. J. Wooten to W. A. Darden, as now appears by the record herein, is a party defendant in this action; that he was examined as a witness for the defendants in the trial of this cause; that as appears by the judgment rendered in this cause at the March Term, 1888, the said assignment was adjudged to be fraudulent and void as to the plaintiffs.

Upon the foregoing facts, it is adjudged that the said Simeon Wooten is not entitled to file his said claim, and share in the distribution of the fund in the hands of the receiver heretofore appointed in this cause.    The defendant W. A. Darden, and the defendant Simeon Wooten, except to the said judgment and appeal to the Supreme Court.

The defendant Simeon also excepted to the report of the referee, but as the questions presented were not pressed on the argument, the facts need not be stated.

The defendant trustee, and other defendants, insist that the defendant trustee be allowed to apply any fund still in his hands, and such as he has paid over to the receiver under order of the Court, and such as he may recover in said actions of claim and delivery on the attachment judgments referred to in this action, in which said trustee had replevied the goods and assumed personal liability, acting in good faith, and before the validity of the assignment from said W. J. Wooten to said trustee, W. A. Darden, was determined.

This was refused, and defendants excepted.

*Messrs F. A. Woodard* and *W. C. Munroe*, for plaintiff.
*Mr. W. R. Allen*, for defendant.

SHEPHERD, J.:

1. The first exception is addressed to the ruling of His Honor upon the question of parties.

The appellants (who are W. A. Darden, the trustee, and Simeon Wooten, a preferred creditor), objected to proceeding to trial because of the death of the defendant Mrs. Julia Wooten, another preferred creditor.

Her heirs at law had no interest in the land conveyed in the assignment, because she had joined with her husband, the trustor, in the execution of the deed, and it was binding as to them; and for the further reason, that upon her death, her interest, if any remained in her, vested by survivorship in her husband. *Woodford* v. *Highly*, 1 Winst., 257. Neither did she have any interest in the personalty, as whatever interest she may have had therein, passed to her husband as sole distributee.

The only interest, then, which she could, in any view, have asserted against the plaintiffs, was that of a preferred creditor, and her personal representative did not then apply, nor has he ever applied, to be made a party; nor does it appear that he has ever offered in any way to enforce the alleged claim of his intestate.

The appellants, therefore, were the only persons who prayed that her representatives be made parties to the action. Did they have a right to insist upon this, and thus delay the trial? As it does not appear that Simeon Wooten had any interest which conflicted with that of Mrs. Wooten, and as it was not at that stage of the proceeding that such interest, had it existed, could have been determined, (the issue being confined to the validity of the deed alone), it is plain to us that he had no legal right to insist upon the objection. Such conflicting claims between *cestuis que trust*

could have been passed upon subsequent to the trial of the issue, and to that end the Court could have brought in the proper parties. Mitford Ch. Pl., 430, notes.

The question presented, then, is whether the presence of Mrs. Wooten was necessary upon the trial of the said issue, and whether the trustee could, as a matter of right, insist upon the joinder of " her representatives."

Without discussing the general subject of the joinder of trustees and *cestuis que trust,* and leaving untouched the principles declared in the several decisions of this Court, as applied to particular cases, we will consider the single question here presented, to-wit, whether, in an action brought by a creditor to set aside an alleged fraudulent trust or assignment, it is *necessary,* upon the trial of an issue as to the validity of the trust or assignment, that the *cestuis que trust* should be made parties defendant; and whether the trustee, as a matter of right, can, in all cases, have them made co-defendants. In *Barrett* v. *Brown,* 86 N. C , 556, cited by the appellants, there is a general expression favoring the affirmative of the proposition, but it will be noted that the plaintiff in that case was seeking to *enforce* the trust by having an account taken, in order that she might have her "*pro rata* share of her claim," and the Court very properly decided that the trustee had a right to have each *cestui que trust* present, in order that he might contest the claims of the others, and thus protect the trustee, and have a complete settlement of the whole litigation. Quite different is the case before us. " There is a broad distinction (says Pom. Remedies and Remedial Rights, 357, cited, with approval, by Wait on Fraudulent Conveyances and Creditors' Bills, § 137), between the case of an action brought in oppo-ition to the trust to set aside the deed or other instrument by which it was created and to procure it to be declared a nullity, and that of an action brought in furtherance of the trust, to enforce its provisions, to establish it as valid, or to

procure it to be wound up and settled.   In the first case, the suit may be maintained without the presence of the beneficiaries, since the trustees represents them all, and defends for them."   To the same effect is the opinion of Chancellor Walworth, in *Rogers* v. *Rogers*, 3 Paige, 379.   This case seems to be regarded as a leading one, and has been almost universally cited in the reports and text-books.   The Chancellor says:   "But where the complainant claims in opposition to the assignment or deed of trust, and seeks to set aside the same on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee, who is the holder of the legal estate in the property, without joining the *cestui que trust*.   Such has been the uniform practice of this Court in relation to cases of this description."

Such, also, is the opinion of Lord Redesdale (Mitford Ch. Pl. 4, London Ed., 175), and of Justice Story (Eq. Pl., §§ 215, 216).   See also Burrell on Assignments, 599; *Russell* v. *Lasher*, 4 Barb., 232; *Wheeler* v. *Wheedon*, 9 How. Pr., 293; *Tucker* v. *Quinnerman*, 61 Ga., 599.

The overwhelming weight of authority is in favor of the rule as above stated.   "The true explanation of this doctrine (says Story, *suprá*, § 141), is, that in cases of this sort, Courts of Equity proceed upon the analogy of the common law, which treats the personal representative of the deceased debtor or testator as the regular representative of all persons interested in the personal assets and bound by his *bona fide* acts, so far as third persons are concerned."   This view is also strongly sustained in *Cheatham* v. *Rowland*, 92 N. C., 340, in which the Court refused to join the *cestuis que trust*, at the instance of the trustees, where a claim was asserted against the trust property.   "The trustees (says the Court) are the proper persons as legal owners in charge to manage and take care of the common property, not only in its preserva-

107—2

tion, but in its defence against unjust and unreasonable demands, from whatever source they may come. When the trust is abused and they neglect or misappropriate the property, those interested may interpose to prevent the injury and enforce the execution of the trust, or even have the estate taken away and put into other hands." Many reasons, founded upon expediency as well as justice, are assigned for the rule as stated, prominent among which is the avoidance of the delay resulting from the death of *cestuis que trust* and the time elapsing before their representatives can be made parties. Again, in the case of a general assignment (as this appears to be), great difficulty will be met in the service of process upon a large number of *cestuis que trust,* especially where some of them are non-residents, or whose residence is unknown. Adhering, as we do, to the principle as laid down, that the *cestuis que trust* are not *necessary* parties in actions to set aside deeds of trust or assignments for the benefit of creditors, we think that we are authorized, under the liberal provisions of *The Code,* to say that a creditor *may* join the *cestuis que trust* in such an action, and that the *cestuis que trust* may themselves apply to be made parties defendant. But while they may thus be made parties, we do not think that the death of any or all of them, pending the suit, should be a cause of delaying the trial of the issue touching the validity of the deed, unless it appears that the trustee is not defending in good faith, or that the ends of justice will be better subserved by having the representatives present. This is addressed to the wise discretion of the Court, to be exercised in view of the particular circumstances attending each case.

The Court may also, upon proper cause shown by the trustee (such as a want of funds to conduct the defence, or for the purpose of indemnity against costs), require the joinder of the *cestuis que trust,* but the same discretion as to

compelling a trial is vested in the Court, in this case as in the others, in the event of the death of any such parties.

Applying these principles to the case before us, it is clear that his Honor was right in not postponing the trial because of the death of Mrs. Wooten. The issue did not in the least affect her claim, but was confined solely to the validity of the deed. Her representative did not apply to be made a party, nor did the trustee show any proper ground why her representative should be joined. Neither did it appear to the Court in any way, that the trustee was not making a *bona fide* defence. On the contrary, it seems that the case was stubbornly contested from the beginning to the end. We are, therefore, of the opinion that the first exception cannot be sustained.

2. The second exception is to the ruling of the Court, declining (after the deed was found to be fraudulent) to allow Simeon Wooten to prorate with the plaintiff creditors in the proceeds of the property conveyed therein. It does not appear that the said Wooten participated in the fraudulent intent of the trustor, but he claimed under the deed and united with the trustee in defending it against the just claims of the plaintiffs. He has never abandoned this adverse position, and is even now insisting upon a new trial upon the issue involving the validity of the said trust. Occupying this antagonistic position, he seeks to share in the fruits of the plaintiffs' recovery, and the question is, shall he be permitted to do so?

In order to determine this point, it is necessary to consider the true character of this action. It is claimed that it is in the nature of a creditor's bill, and that in such actions all creditors may, at any time before final decree, be allowed to come in and prove their claims. Undoubtedly, such is an incident of what is ordinarily called a "general creditor's bill." Such bills are usually instituted for the purpose of winding up the insolvent estates of deceased persons or the

affairs of a corporation. These may be illustrated. by the cases of *Pegram* v. *Armstrong*, 82 N. C., 326; *Wordsworth* v. *Davis*, 75 N. C., 159; *Long* v. *Bank*, 81 N. C., 41; *Glenn* v. *Bank*, 80 N. C., 97; *Dobson* v. *Simonton*, 93 N. C., 268. In such cases there are many parties standing in the same situation as to their rights or claims upon a particular estate or fund, and the shares of a part cannot be determined until the rights of all the others are settled or ascertained. Of this nature, also, are bills brought to enforce trusts or assignments for creditors, and other instances where there is a community of interest, or where the law devolves upon the Court the duty of taking a fund into its custody and distributing it according to the respective interests of the parties. In such cases no priority can be acquired by one person suing or making himself a party before others; and, perhaps, one who has vainly endeavored to defeat the purposes of the action may, upon proper terms, be allowed his share in the fund.

Such creditors' bills, however, are totally different from those instituted by an unsecured creditor (or several creditors, if they choose to unite) against a living debtor. Here the field is open to all, and he who first secures a priority shall reap the reward of his diligence. Such bills are often said to be in the nature of an equitable *fi. fa.*, or equitable levy (Bisp. Eq., 528), and under them the vigilant creditor may acquire a priority, as he does when he pursues the analagous remedy of execution at law. Bills of this kind are called "Judgment Creditors' Bills" (see Harvard Law Review, October, 1890), and are so familiar in our practice, that it is hardly necessary to illustrate them by a reference to actual cases. They were entertained in equity for the purpose of subjecting equitable and other interests which could not be reached and sold under execution, and also for the purpose of removing obstructions to legal remedies, as by setting aside fraudulent conveyances and the like.

Under the former practice, in either of the last-mentioned cases, it was necessary, before a resort could be had to a Court of Equity, that the creditor should first obtain judgment and show that the legal remedy by execution was ineffectual; but this, under the decision of this Court in *Bank* v. *Harris*, 84 N. C., 206, is now unnecessary, and both causes of action may be included in one suit. This decision by no means ignores the distinct character of a judgment creditor's bill. On the contrary, it expressly recognizes it as it formerly existed, dispensing only with the necessity of obtaining a judgment in an independent action. The result of the decision is to render the proceeding still more efficacious, as we think that by its institution it creates a preference by way of an equitable lien, whether the interest sought to be subjected be legal or equitable. This view is supported by Wait in his "Fraudulent Conveyances and Creditors' Bills," § 85, who, in commenting upon *Bank* v. *Harris*, says, that upon the principles of the case "it would seem to follow that the usual incidents of a (judgment) creditor's suit must attach to the proceeding." Where the contrary is held, we think that an examination of the decisions will disclose that they relate either to the subjects of a general creditor's bill, or were rendered by Courts which held that the obtaining of a judgment is a prerequisite to the commencement of a judgment creditor's bill. In reference to this latter requirement, Mr. Wait (*supra*) remarks that North Carolina and Indiana are the only exceptions. The authorities, therefore, in the other States are not entirely applicable to the practice with us.

It should also be noted, in this connection, in reference to legal interests, that before the statute of 13 Elizabeth, the remedy to set aside fraudulent conveyances was exclusively equitable, and that it has never been held in this State, that the statute deprived a Court of Equity of its jurisdiction in

such cases. See remarks of PEARSON, J., in *Thigpen* v. *Pitt*, 1 Jones Eq., 57.

It is believed that any other rule than that which we have indicated would be attended with inextricable confusion and conflict as to priorities among various creditors pursuing their remedies in other actions and jurisdictions. Even if this were not so as to legal assets, yet if we assimilate in its effect, the judgment, when actually obtained, to an execution at law (and this, we think, must surely follow from the principle of *Bank* v. *Harris, supra,* and especially in view of the system of judgment liens adopted by *The Code*), the plaintiffs in this action would still have priority, as they have all obtained judgments, and Simeon Wooten has none. He and the plaintiffs had been fighting at arm's length, each endeavoring to establish a priority over the other. The plaintiffs have been victorious, and the deed having been declared fraudulent and void as to them, their preference must be recognized, and the claim of the losing party postponed. This, as we have said, would, perhaps, have been otherwise if there had been such a community of interest in the property as to make it the subject of a general creditor's bill, but no such result as contended for can follow where there is no such common interest, and where the property is open and subject to the action of the most vigilant creditor—*lex vigilantibus favet*. In coming to this conclusion, we are but applying in one action the same principles which were formerly administered in the divided jurisdictions of law and equity. The true spirit of equity in cases of this character is, we think, fully reflected by the remarks of Chancellor Walworth, in *Edmeston* v. *Lyde*, 1 Paige, 637. He says: "On further examination it may seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination, should, in the end, be obliged to divide the avails thereof with those who have slept upon their rights, or have intentionally kept

back, that they might profit by his exertion." To the same effect is the language of Chancellor Kent, in *McDermitt* v. *String*, 4 Johns. Ch., 691.

It is urged that the order made at Spring Term, 1887 (consolidating the various actions and requiring notice to be published for all creditors to come in and make themselves parties), had the effect of converting this into a general creditor's bill. If we are correct in the view we have taken, such an order could not have been made over the objection of the plaintiffs, if its effect was to deprive them of the priority they had attained by the commencement of the action, nor could the consolidation of other pending suits produce such a result. The order, however, was not objected to, and its effect as to questions of priority among the plaintiffs is not before us, as there seems to be no conflict between them. Conceding, however, that the order placed all who availed themselves of its provisions upon an equal footing, it amounted to no more than if they had united in the first instance, for the property involved was not, under the circumstances, as we have seen, the subject of a general creditor's bill, and the action, in its essential features, still retained its original characteristics. The order certainly cannot be extended so as to embrace those who, instead of accepting its terms, allied themselves with the defenders of the fraudulent assignment in their efforts to defeat the sole purpose of the action.

Our attention has been called to the case of *Means* v. *Dowd*, 128 U. S. Rep., 273. In that case the creditors secured by the fraudulent assignment were permitted to file their claims, because they were actual creditors, and the estate of the bankrupt was in the custody of the law, and, in this respect, as in many others, a proceeding in bankruptcy is in the nature of a general creditor's bill. The entire estate had to be settled among all of the creditors, and there seems to be no positive rule of law or equity which makes the mis-

conduct of a creditor a cause of forfeiture of his debt. The decision, therefore, is not applicable to an action like ours. For the reasons given, we are of the opinion that his Honor committed no error in declining to allow Simeon Wooten to share equally with the plaintiffs in the proceeds of the property included in the fraudulent assignment.

3. We have very carefully examined the record for the purpose of discovering upon what principle the claim of the trustee, to be subrogated to the rights of certain creditors, is based. We have been unable to find anything in support of this contention, and the exception, in this respect, must be overruled.

Upon the whole case, presenting, as it does, several novel and very interesting questions, we can find no error.

Affirmed.