This action was brought by the plaintiffs to set aside as fraudulent a bill of sale made by the Toxaway Hotel Company to R. A. Jacobs, conveying certain personal property, and a deed of trust executed by Jacobs to the Wachovia Bank and Trust Company to secure the purchase-money notes given for the personal property described in the bill of sale, the same being a stock of goods and certain cattle, horses, farming utensils, and so forth. The deed of trust and notes referred to were dated 13 November, 1906. There were fourteen of the notes, each (471) for the sum of $500. The plaintiffs alleged that the bill of sale, notes, and deed of trust were executed by Jacobs and the Toxaway Hotel *Page 522 
Company with the intent to hinder, delay, and defraud the plaintiffs and other creditors of the Toxaway Hotel Company.
McMichael intervened pending the action, and alleged that he was an innocent purchaser for value of four of the notes secured by the deed of trust, amounting to $2,000, principal, which said notes were all dated 13 November, 1906, and were due respectively 1 July, 1907, 1 January, 1908, 1 July, 1908, and 1 January, 1909; and also that he was a holder of the same in due course without notice of any fraud. Frank Co. also intervened and made a like claim as to $2,000 of the notes.
The case was first tried before Foushee, J., at November Term, 1912, when there was a verdict in favor of the plaintiffs, but upon appeal by the intervenors and defendants, this Court granted a new trial, 162 N.C. 346, where the principal facts are stated.
The case again came on for hearing before Judge Justice at February Term, 1914. At that term the court submitted to the jury four issues, which appear in the record, and the jury found that the debts of the plaintiffs were as claimed by them; that the deed of trust and bill of sale referred to were fraudulent; and that the intervenors, McMichael and Frank Co., were each purchasers for value of the notes claimed by them. The judge, at this trial, instructed the jury peremptorily on the issues as to the intervenors' claims, and the intervenors and defendants admitted that the deed of trust and bill of sale were fraudulent. The judge, however, at that term, upon motion of the plaintiffs, set aside the verdict on the third and fourth issues, in which the jury found that McMichael and Frank Co., were innocent purchasers for value of the notes held by them, becoming convinced that he had committed error in not submitting those issues to the jury under proper instructions, and retained the other issues by consent. When the case came on to be heard at the April Term, 1914, of the court, before Judge W. F. Harding, he submitted two issues only to the jury. One was as to whether or not McMichael was an innocent purchaser for value and without notice of fraud in the notes claimed by him, and the other involved the same inquiry as to Frank Co. As has been stated, the jury found in favor of McMichael on this trial and against Frank Co., and returned a verdict that McMichael was an innocent purchaser for value of the notes claimed by him, and that Frank Co. were not innocent purchasers for value of the notes claimed by them. There was a judgment in favor of McMichael, directing that he be allowed to recover the full sum of $2,000, principal, with interest thereon from the date of the notes, and that this sum be paid out of the funds in the hands of the receiver heretofore (472) appointed in this cause. There was a further judgment that the plaintiffs recover on their debts and that the receiver pay the *Page 523 
balance of the funds to them pro rata, there not being sufficient funds to pay their debts in full. It appeared on the trial that the deed of trust referred to had originally secured $7,000 in notes; that one of the notes had been paid by the defendant Jacobs; and that $6,500, principal, of the notes was still outstanding. McMichael claimed $2,000 of the notes and Frank Co. claimed $2,000 of the same. No one presented the other notes or made any claim thereon. It appeared on the trial that the plaintiffs had brought this action in June, 1907, and had levied an attachment on all of the property then in the possession of the defendant Jacobs which had been conveyed to him by the defendant Toxaway Hotel Company, and that a receiver had thereupon been appointed by the court in this cause to convert the property into money, and that he had on hand at the time of the trial of this cause about $4,500 of the funds derived from the sale of the property covered by the bill of sale and the deed of trust, which had been attached in this cause.
The parts of the deed of trust from R. A. Jacobs to Wachovia Bank and Trust Company, dated 13 November, 1906, material to this inquiry, are as follows: After reciting the execution of the fourteen notes, each for $500 and aggregating $7,000, and the dates of their maturity, Jacobs conveys to the Wachovia Bank and Trust Company the property, describing it, "upon this special trust, nevertheless, that the said party of the second part, its successors and assigns, shall hold said personal property for the following and no other purpose, to wit: If the party of the first part shall fail to pay the aforesaid sum of money or any part thereof promptly as it, or any part thereof, shall become due, or shall fail to pay any part of the interest that may accrue thereon promptly as the said interest becomes due, or shall fail to keep the personal property insured strictly in accordance with the promise of the said party of the first part, as hereinafter set forth, or shall fail to pay the taxes on said property within the time prescribed by law for their payment, or shall fail to keep faithfully all other covenants contained herein, and in the notes hereby secured, then immediately upon such default in any of these respects the party of the third part may declare the whole of said indebtedness and interest and all other moneys then owing from the said party of the first part to the said party of the third part secured hereby, instantly due and payable, and it shall be the duty of the said party of the second part, its successors and assigns, and it is hereby authorized and empowered, to sell all of said personal property" (describing it), and convey it to the purchaser, "and apply the proceeds of said sale to the discharge of said indebtedness herein secured and interest on the same, and to the payment of the expenses of this trust, including 5 per cent commissions to the trustee, and of any moneys then owing from the said party (473) *Page 524 
of the first part to the said party of the third and secured by this deed in trust, any surplus to be paid to the said party of the first part." The juries returned the following verdicts: Upon the issues submitted and retained by Judge Justice:
1. Is the Toxaway Company indebted to the plaintiff, as alleged in the complaint? Answer: "Yes," by consent.
2. Were the bill of sale, deed of trust, and notes dated 13 November, 1906, mentioned in the pleadings in this cause and executed between the Toxaway Hotel Company and R. A. Jacobs, made and executed with intent to hinder, delay, or defraud the creditors of the Toxaway Hotel Company? Answer: "Yes," by consent.
Upon the issues submitted by Judge Harding:
3. Are the intervenors J. C. McMichael, Inc., innocent purchasers for value, and without notice of said fraud, of the notes mentioned in paragraph 7 of the plea of intervention filed herein? Answer: "Yes."
4. Are the intervenors Frank Co. innocent purchasers for value and without notice of such fraud of the notes described in paragraph 7 of the plea of intervention filed herein? Answer: "No."
Judgment was rendered in favor of McMichael upon the verdict, and plaintiffs appealed therefrom, and against Frank Co. upon the verdict as to them, and they also appealed.
APPEAL BY PLAINTIFF.
First exception. The judge properly refused to submit the first and second issues tendered by plaintiffs, because they had already been answered at a previous term. They merely related to the indebtedness of the Toxaway Hotel Company to plaintiffs and the fraudulent character of the notes, deed of the Hotel Company to Jacobs, and the latter's deed of trust to the Wachovia Bank and Trust Company. The two issues already answered could have been referred to in the argument of counsel to the jury, if desired, and we presume they exercised this right, and it appears from the case that the jury must have understood clearly the nature and bearing of those two issues and the answers thereto.
Second exception. The court was correct in refusing to permit the reading of the original complaint to the jury, and the answer of the Toxaway Hotel Company thereto, as the issues raised thereby had been decided. It allowed all plaintiffs were entitled to, viz., the reading of the interplea of the intervenors and plaintiffs' reply thereto. The *Page 525 
court afterwards allowed the plaintiffs to read section 21 of their (474) complaint, not as evidence, but as merely showing the nature of the allegations and to inform the jury as to the character of the issues they were trying. This was quite sufficient for the plaintiffs' purpose.
Third, fourth, fifth, and sixth exceptions. These exceptions fall under the same head as the second. The intervenor McMichael was permitted to read from the interplea and the reply thereto for the evident purpose of explaining the issues to the jury.
Seventh, eighth, and ninth exceptions. If McMichael knew the facts to which he testified, there is no reason why he should not have been allowed to state them. The corporation of J. C. McMichael, Inc., was recognized and dealt with as such by the hotel company, indorser of the notes to it, and this is sufficient, with the other evidence, to show prima facie, at least, its incorporation and capacity to contract. R. R. v. Johnston, 70 N.C. 348;Dobson v. Simonton, 86 N.C. 492. In their reply to McMichael's intervention plaintiffs do not deny the allegation of the incorporation which appears therein, but rather admit it by "replying to the further answer of the said J. C. McMichael, Inc.," and then proceeds to answer the other allegations. Besides, the objection to McMichael's answer to the question is too general, as his testimony relates to several distinct matters, some of which, at least, he was competent to speak of.
Tenth exception. It was competent for the witness J. C. McMichael to state that the notes were accepted by him in good faith as a payment of a valid indebtedness then due by the hotel company to him. He conducted the transaction for the corporation and knew the fact. His good faith had been impeached, and when this is the case, it has been held that he may speak of it to the extent of saying whether or not he acted fraudulently or in bad faith, or not. Phifer v. Erwin, 100 N.C. 59, and Sanford v. Eubanks,152 N.C. 697, citing 1 Wharton on Ev., sec. 482, and S. v. King,86 N.C. 603. In the last case Chief Justice Smith said that when one is charged with a bad motive or intent, it is competent for him to disavow it and to deny the specific intent which it is alleged vitiates the transaction or shows his criminality, and to this effect is Phifer v.Erwin, supra, where the intent charged was a fraudulent or dishonest one, involving bad faith. As McMichael acted for the corporation, its intent could only be shown or disproved by his intent. It could not act very well, either honestly or dishonestly, except through its officers. McMichael was virtually the corporation and the corporation was McMichael. It could think, speak, and act only through him. It was a distinct legal entity, but he was the intermediary through whom its dealings were conducted with others. *Page 526 
(475) Exception eleven. The question here presented is whether there was any evidence that the notes were indorsed by the hotel company. There was an indorsement on the note purporting to have been signed by the company. We think there was some evidence of its genuineness. It is true, we said in Tyson v. Joyner, 139 N.C. 69, that an indorsement does not prove itself, but requires some outside or extraneous evidence to show the handwriting of the alleged indorser, but this appears in this case by the testimony of Thomas H. Shipman and J. C. McMichael, and there were facts and circumstances which tended to prove it.
Exception twelve. The court sufficiently instructed the jury as to the burden of proof being upon the intervenors, and substantially complied with the request for instructions on that point. The charge was confined to the rule as stated in the statute, Revisal, sec. 2208, and as construed in Bankv. Fountain, 148 N.C. 590, and Bank v. Branson, 165 N.C. 344, and numerous cases therein cited.
Exceptions thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, and twenty. Of these, exception thirteen refers to Frank Co. and is not available to plaintiffs on this appeal. Besides, they recovered as to him. Exceptions nineteen and twenty are merely formal, being addressed to the refusal of the court to set aside the verdict, and we will hereinafter consider the one to the judgment entered thereon. The remaining exceptions relate to the charge upon the question as to knowledge of the fraud by McMichael and his bad faith in acquiring the notes. Our statute provides (Revisal, ch. 54, sec. 2205): "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."
In this case when here on a former appeal (162 N.C. 346), Justice Hoke
traces the changes in the rule which disqualified one to claim as innocent purchaser or holder in due course; the repudiation by the courts of LordTenterden's "due care and caution" rule, and the substitution of the more definite and safer principle introduced by Lord Denman, requiring actual knowledge of the fraud or defect, or of such facts as would make the act of acquiring the note amount to one of bad faith. The two rules are contrasted in Hamilton v. Vought, 34 N.J. L., 187, and it was shown that decided preference and sanction has been given by the courts to the later and more modern rule of Lord Denman, which has been incorporated into our statute.
We have examined the charge of the court in this case, and while it might have been a little more explicit and kept in closer touch with the *Page 527 
language and spirit of our law, it was sufficiently definite and clear to fully inform the jury, without danger of misleading them, as to what the intervenors must show in order to establish their claim (476) of being holders in due course, and as to what would constitute actual knowledge of the fraud or defect in the execution of the notes, deed, and deed of trust, or, if there was no such actual knowledge, then what would constitute bad faith on their part in the transaction.
The case has been fairly tried upon its merits. We really can discern no clear indication of a fraudulent knowledge or of bad faith, so far as McMichael is concerned. The corporation appears to have had an honest and valid claim against the hotel company, for which the note was fairly and in good faith transferred to it. But the court left the matter to the jury, and they have settled it against the plaintiffs, and we think justly so. The transaction, so far as we can see, bears the impress of fair dealing. We find no badge of dishonesty, even placing the burden upon the intervenor to acquit itself of the charge of fraud and bad faith. Chief JusticeBeasley said in Hamilton v. Vought, 34 N.J. L., 187, that under LordTenterden's rule every case possessed of unusual incidents would, of necessity, pass under the uncontrolled discretion of the jury — a mere incident of the transaction, from which any suspicion could arise, being sufficient to take the case out of the control of the court, and, therefore, there was left no judicial standard by which suspicious circumstances could be measured before committing them to the jury. It is precisely this want which the modern rule supplies. He then says: "Whenmala fides is the point of inquiry, suspicious circumstances must be of a substantial character, and if such circumstances do not appear, the court can arrest the inquiry. Under the former practice, circumstances of slight suspicion would take the case to the jury; under the present rule, the circumstances must be strong, so that bad faith can be reasonably inferred." There certainly are no facts here which will stand the test of this more drastic rule. There are no strong circumstances of suspicion, but all we find are weak and inconclusive.
There is one more question requiring our notice. The amount secured by the deed of trust executed by R. A. Jacobs to the Wachovia Bank and Trust Company was originally $7,000. One of the $500 notes was paid by Jacobs, leaving $6,500 still secured. Of the remaining notes, thirteen in all, McMichael held four, Frank Co. four, or eight in all, leaving five, aggregating $2,500, still outstanding; but these notes, it appears, were never issued or put in circulation, as no one has presented or claimed them. It follows, therefore, that the only notes secured were those of McMichael and Frank Co. The trustee realized $4,500 from the sale of the property, and that amount is in his hands for distribution *Page 528 
to the secured note-holders, after, we presume, first paying costs and expenses. At any rate, there are ample funds to pay McMichael and to leave a considerable balance.
(477) Plaintiffs, who brought this suit to set aside and cancel the deed, notes, and deed of trust, and failed as to McMichael, and levied a writ of attachment on the property, now insist that, as the notes held by Frank Co. were avoided for the fraud of which he had notice, they should be subrogated to the right he would have had in the distribution of the fund if he had succeeded in establishing and retaining his claim against their attack. They, therefore, assert the right to share pro rata with McMichael in the distribution of the assets; but this is far from being the law. Plaintiffs cite and rely on Hancock v. Wooten,107 N.C. 9. That suit was treated as a judgment creditor's bill, and the Court held that it was in the nature of an equitable fi. fa., having the force and effect of an equitable levy upon the assets of the debtor, by virtue of which the vigilant creditor acquires a priority as he would when he pursues the analogous remedy at law. The creditor is not, under our present system, required to obtain judgment before proceeding in equity, so to speak (Bank v. Harris, 84 N.C. 206); but notwithstanding this change, the same principle governs which formerly prevailed in regard to the priority of his claim. Hancock v. Wooten, supra, and cases cited at p. 20. It is an eminently just rule, when clearly understood and confined to its proper limits, for it would seem unjust that the creditor who has incurred all the risk and expense of bringing his suit to a successful termination should, in the end, be obliged to divide the avails thereof with those who have slept upon their rights, or have intentionally kept back, that they might profit by his exertion. Edmestonv. Lyde, 1 Paige (N. Y.), 637; McDermitt v. String, 4 Johns. Ch., 691 (per Chancellor Kent). The rule is not applicable to a general creditor's bill. But we have a very different case here. In Hancock v.Wooten the creditor who made common cause with the trustee in resisting the attack upon the deed of trust utterly failed to make good his defense, and was compelled to surrender, because the deed was found to be fraudulent and void as against creditors, and it was so adjudged. He was not allowed "to blow hot and cold," and was postponed until the attacking creditors were satisfied, as a just reward for their diligence and as a punishment to him for his false clamor and his wrongful resistance. But McMichael stands upon much higher ground than he did. He has succeeded in sustaining the deed of trust, so far as it secures him, against the attack of the plaintiffs. Why, then, should he lose his prior lien upon the funds? It is expressly given in the deed of trust, which provides that if the indebtedness of Jacobs, or any partthereof, is not paid, the trustee shall sell the property and apply the *Page 529 
proceeds to the same, that is, to what is then due. There was no application of any particular part of the property to each of the notes, but each and every note was made a lien upon all of the property. If Jacobs had paid the other notes, would it not have inured to McMichael's benefit and entitled him to full payment, although he would have received (478) less if they had not been paid? Surely, this would be the case; and by retiring Frank Co. from the distribution a like result must follow. But the question has been settled by authority. 20 Cyc., p. 827, says: "Creditors who attack a conveyance executed by a debtor to secure certain other creditors, and succeed in establishing the fictitious or fraudulent character of some of the claims so secured, are not thereby advanced to the place of the excluded claimants so as to take priority over the bona fide creditors named in such conveyance; but such bonafide creditors are entitled, not only to the pro rata share which would have gone to them respectively if all the claims had been valid, but to their shares of the whole of the property conveyed, up to the full amount of their respective claims." The cases cited for this principle fully support the text. Woodson v. Carson, 135 Mo., 521 (s. c., 35 S.W. 1005, and 37 S.W. 197); Tefft v. Stern, 73 Fed. Rep., 591 (21 C.C.A., 67, decided by Judges Hammond, Severens, and Barr); Farmers NationalBank v. Teeter, 31 Ohio St. 36. And, again, says 20 Cyc., at p. 822: "Where a conveyance is fraudulent as against creditors, and certain creditors attack and defeat it upon that ground, another creditor is not by that fact required to treat it as void, but may still ratify it and enforce rights given him thereunder." And to the same effect is GermanNational Bank v. Leonard, 40 Neb. 676. In Hardcastle v. Fisher,24 Mo., 75, Justice Leonard forcefully and tersely thus states the rule: "The attaching creditor, however, cannot be allowed to stand in the place of the excluded claimant, and take his share of the fund. There is no legal principle upon which we can allow this. The impeached claim is extinguished by the fraud, so far as any participation in the assigned effects is concerned; and the effect of this in reference to the other creditors is that the share that would otherwise have been appropriated to its payment sinks into the residue for the benefit of those who are entitled to it by the terms of the deed." Another strong authority isCohen v. Ward, 15 S.E. (W.Va.), 141. Many other cases might be cited which recognize and apply the same doctrine, but those we have mentioned would seem to suffice.
There is no merit in the objection as to the lost notes. They were produced at the former trial and afterwards lost by the clerk of the court, and it was competent to refer to them.
The case is a very important one, with respect to the amount as well as to the principle involved, and we have given it a most careful *Page 530 
examination and have been unable to discover that any error was committed by the court below in this appeal.
No error.
Cited: Smathers v. Hotel Co., 168 N.C. 69 (S.c.); Weeks v. TelegraphCo., 169 N.C. 705 (4c); Howard v. Wright, 173 N.C. 345 (4c); Holleman v.Trust Co., 185 N.C. 52, 53 (9c).
(479)