CLINCHFIELD FUEL CO. et al. v. TITUS et al.

TITUS v. GRANITE BRICK CO. et al.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

No. 1322.

1. APPEAL AND ERROR ⬥⟶336—DISMISSAL—PARTIES.

In view of Rev. St. § 1005, declaring that a writ of error or appeal, defective by reason of the absence of parties, may be corrected in the discretion of the court although the period within which a new writ of error could be sued out from the date of the original judgment had elapsed, an appeal by judgment creditors, who sought to enforce the lien of their judgments upon the winding up of a corporation, will not be dismissed because simple contract debtors other than the principal one were not made parties; it appearing that all rights which they might have urged were urged by the one who was a party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1868–1876; Dec. Dig. ⬥⟶336.]

2. CORPORATIONS ⬥⟶566—DISSOLUTION—LIENS—RECOVERY.

Where a court of equity takes jurisdiction over the property of a debtor corporation to wind it up, no lien can be acquired save under special circumstances or provisions of law, except by decree of the court having jurisdiction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. ⬥⟶566.]

3. EQUITY ⬥⟶39—JURISDICTION—COMPLETE RELIEF.

Where a court of equity acquired jurisdiction of a suit by a creditor of a corporation to whom corporate stock had been pledged, and it appeared that the corporation was insolvent, the court will retain jurisdiction and proceed to administer complete relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114; Dec. Dig. ⬥⟶39.]

4. CORPORATIONS ⬥⟶566—INSOLVENCY—JUDGMENT LIENS—VALIDITY.

A creditor of a corporation filed his bill in federal court against the corporation, praying that it be restrained from mortgaging or otherwise incumbering its property, that a receiver be appointed, and that other creditors be required to prove their claims. A temporary restraining order was issued which did not restrain the other creditors from reducing their claims to judgment, and pending further proceedings plaintiffs in error reduced their claims to judgment in the state courts. Thereafter a receiver was appointed, and the federal court proceeded to wind up the affairs of the corporation. Held that, by reason of their superior diligence, plaintiffs in error were entitled to their liens acquired by their judgment at law, for, until a decree was passed either enjoining creditors from pursuing their legal remedies or a receiver was appointed, they might proceed at law.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. ⬥⟶566.]

5. EQUITY ⬥⟶54—MAXIM—EQUITY FOLLOWS THE LAW.

Where creditors reduced their claims to judgment notwithstanding the filing of a suit wherein a receiver was subsequently appointed and all creditors were required to prove their claims, such creditors, under the maxim that equity follows the law, take priority despite the rule that equality is equity.

[Ed. Note.—For other cases, see Equity, Dec. Dig. ⬥⟶54.]

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Bill by Edward H. Titus against the Granite Brick Company and others, in which the Clinchfield Fuel Company and others, judgment creditors, presented claims. From a decree denying them priority, they appeal. Reversed.

William H. Lyles and D. C. Ray, both of Columbia, S. C. (Lyles & Lyles, of Columbia, S. C., on the brief), for appellants.

B. L. Abney, of Columbia, S. C., for appellees.

Before KNAPP, Circuit Judge, and WADDILL and CONNOR, District Judges.

CONNOR, District Judge. This is an appeal by judgment creditors of the Granite Brick Company, from the decree of the District Court, directing distribution of the proceeds of sale of the property of the corporation, made pursuant to the decree of the court in No. 1307, Granite Brick Co. et al. v. Titus, 226 Fed. 557, —— C. C. A. ——. The decree appealed from by the defendant, in that case, having been affirmed, the sole question presented upon this record is whether appellants, holding judgments against the Granite Brick Company, rendered in independent actions in the state court, subsequent to the filing of the bill in that suit, are entitled to be paid from the proceeds of the sale of its property before any portion thereof is applied to the simple contract debts.

The original bill was filed by appellee Edward H. Titus, March 29, 1912. A temporary restraining order was entered on the same day enjoining the defendant the Granite Brick Company from executing a mortgage or otherwise incumbering its property until the "further order of the court."·

On May 9, 1912, the Clinchfield Fuel Company obtained a judgment by default against the Granite Brick Company, in the court of common pleas of Richland county, S. C., for $961.73 and cost. Judgments against the defendant company were obtained in the same court by the other appellants, prior to November 8, 1912, all of which, under the state statute, constituted liens on the real estate of the Granite Brick Company. An order of reference was made, and, upon confirmation of the report of the standing master, a decree was passed, May 7, 1914, directing the sale of the property of the company.

Appellant Clinchfield Fuel Company filed a petition in the cause on May 14, 1914, setting forth the recovery of judgments constituting liens on the corporate property, and asking that the decree be so modified that, from the proceeds of the sale, the judgment liens, attaching prior to the appointment of a receiver, be paid after the payment of the cost, before any portions of said proceeds be applied to the payment of the debts of the simple contract creditors. Appellee Titus filed an answer to the petition, in which several questions were raised. The District Judge, in his decree, says:

"These judgments were all obtained by default against the Granite Brick Company, posterior to the filing of the complaint herein. They are, in no wise, more meritorious, as claims against the Granite Brick Company, than the other claims set up and established before the standing master. They claim pri-

ority simply because judgment has been actually entered in their favor and, under the statutes of South Carolina, there is given to a judgment, duly entered a lien upon all of the real estate of the judgment debtor in the county in which the judgments were entered, in the county. of Richland, in which the property sold under the order of the court. was situated."

He denied the petition, and the judgment creditors appealed.

[1] Appellees filed a motion in this court to dismiss the appeal upon the ground that a number of simple contract creditors of the Granite Brick Company, other than Edward H. Titus,.the plaintiff in the original suit and the purchaser at the sale, were necessary parties to the determination, by this court, of the question raised on the appeal. Their claims were proven and allowed by the standing master, and no citation was issued to them, nor have they come in and submitted their rights to the determination of the court, otherwise than by proving their debts. The court decreed that the defendant company was indebted to Titus, the plaintiff, in the original suit, in the sum of $72,-222.95 and to other simple contract creditors in sums aggregating about $8,000. The property sold for $15,250. The citation was served on Edward H. Titus, who is the principal and real party interested in the question raised by the appeal and who appears in, and opposes, the petition of appellants. It is manifest that the real substantial party interested is before the court, and that every question open to, or which could be raised by, the other creditors, has been presented by the learned counsel representing him.

[2] In Gilbert v. Hopkins, 198 Fed. 849, 117 C. C. A. 491 (C. C. A., 4th Cir.), it was held that the court, upon appeal, or writ of error, acquired jurisdiction by the issuance of the writ, or taking the appeal within the time limited, and that, in this way, the cause is brought within the jurisdiction of the court, and, although the writ or appeal may be defective, yet such defect, even to the extent of inserting a party omitted before, may, under section 1005, be corrected, although the period within which a new writ of error could be sued out from the date of the original judgment has elapsed. If it appeared, or was suggested, that the other creditors could be injured by the disposition of the appeal, a citation would now be issued and the cause retained until they were heard. It is manifest that every question open to them has been presented by appellee Titus. The sole question for decision, therefore, is whether the lien acquired by the judgment creditors, subsequent to the filing of the bill, but before the appointment of the receiver, entitles them to be paid from the proceeds of the sale of the property, before any part thereof is applied to the payment of the simple contract debts. The learned District Judge was of the opinion: That the original suit was a creditor's bill for winding up and bringing to sale the property of an insolvent corporation for the purpose of paying its indebtedness, and that the court thereby, that is, by the filing of the bill and service of the subpœna, acquired jurisdiction over, and possession of, all of the property and assets of the corporation, for the purpose of an equitable distribution, and that, among all the creditors in like circumstances, at the time of filing the bill, equality is equity. That, "save under special circumstances, or provisions of law, no lien can be acquired upon property thus in control

of the court for that purpose except by the decree of the court thus having control and jurisdiction."

Conceding this to be a correct statement of the general doctrine, recognized and enforced by courts of equity, appellants insist that the conclusion reached in this instance is erroneous for that the original bill, correctly interpreted, is not within the class of cases to which the doctrine applies, and that no decree or order was made, prior to the rendition of the judgments, making the creditors parties, or enjoining them from pursuing their legal remedies, nor was any receiver of the property of the corporation appointed, until November 8, 1912.

An examination of the bill discloses that the plaintiff Titus alleged that the corporation was indebted to him in a large sum for the security of which he held a large number of shares of the capital stock, with a right to vote same in stockholders' meeting; that at a meeting held by the other stockholders he was excluded and denied the right to vote his stock; that at such a meeting a resolution was adopted authorizing and directing the issue of the bonds of the corporation to the amount of $50,000 and the execution to the Columbia Savings Bank & Trust Company of a mortgage or deed in trust, on all of its property, to secure the payment of the bonds. The bill sets out, at length, a history of the transactions between the plaintiff and the company, which appear in the opinion filed in the appeal of the Granite Brick Company. He alleges that the corporation is insolvent, and that it is the purpose of the stockholders and directors to use no part of the proceeds of the bond issue secured by a mortgage on its property in paying his claim or any part thereof, but that it intended to use said proceeds in part payment of other indebtedness of said company, now past due. He prays that the corporation be enjoined from executing or issuing any bonds, or mortgaging its property; "that receivers be appointed for the said Granite Brick Company, with the usual rights and powers in such cases; that all persons be enjoined and restrained from bringing any suit or other proceeding against said Granite Brick Company, except in this action; that the creditors be called in and required to prove their claims, under proper order of this court and for such other and further relief as may be just and proper."

On May 16, 1912, a decree was made, reciting the conclusion reached by the learned judge, continuing the injunction until the hearing. The motion for the appointment of a receiver was denied because "it does not appear that the appointment of a receiver, at this time, is necessary for the preservation of the property." Leave was given "to any party to the cause to move thereafter for a receiver, should circumstances then seem to require it." Creditors were not, at this time, enjoined from bringing suits against the company, nor was any order made calling upon creditors to file their claims. An appeal was taken from this decree, and, upon the hearing, the action of the court was affirmed.

A cross-bill having been filed by the defendant company, on November 8, 1912, a decree was made referring the cause to a standing master to hear testimony and take proof as to all the issues arising upon the bill and cross-bill and report to the court. The decree recites:

"At this time, too, the complainant moves the court for the appointment of a receiver, as prayed for in the bill of complaint, and upon consideration of the pleadings, the affidavits and testimony submitted before me and which has been brought to my attention in the case of Edward H. Titus and others, petitioners in bankruptcy, against the Granite Brick Company, with regard to the condition and circumstances of the said company, and it appearing that there are irreconcilable dissensions between the management of the company, which are irreconcilable, that the company has stopped operations, that it is greatly indebted, without resources, or funds, to insure the property against loss or damage by fire, and without adequate means to have the property taken care of or preserved, and unless some steps are taken for that purpose, the company may suffer irremediable loss and damage, and for divers other reasons appearing to me necessary therefor" a receiver was appointed.

And it was further ordered that all persons be enjoined from bringing any suit, or other proceeding against said defendant, Granite Brick Company, except in this action; that the creditors thereof be called in and required to prove their claims under the order of this court, etc. In an opinion filed March 7, 1914, the judge finds, as a conclusion of fact, that the Granite Brick Company is insolvent—that it is unable to pay its debts as they become due in the ordinary course of business. It seems that no call was made for the creditors to file their claims as directed in the decree of November 8, 1912. The judge again directs that this be done. A decree was made at this time directing a sale of the property and further directing that, upon the coming in of the report and confirmation thereof, the proceeds of the sale be applied first to the payment of the costs and then to all of the creditors of the corporation. At this time the Clinchfield Coal Company filed its petition setting forth the rendition of the judgments and praying for their enforcement as liens upon the property, etc.

[3, 4] On July 9, 1914, upon the coming in of the report of sale and its confirmation, a decree was made denying the petition and directing the payment, from the proceeds of sale after paying the cost, of all the debts pro rata. In regard to the contention made by appellants that the court of equity had no jurisdiction to entertain the bill upon simple contract debts, before being reduced to judgment in actions at law, we are of the opinion that, upon the allegations of the bill and the admissions in the answer, the jurisdiction in equity is amply supported. Complainant's allegations show a course of conduct on the part of the other stockholders and directors destructive of his rights. His only remedy was an appeal to the court of equity. Having acquired jurisdiction, the learned judge wisely and properly and, with the consent of the parties to the suit, proceeded to inquire into the financial condition of the corporation and give complete relief to all parties concerned. The authorities appear to hold that, until a decree is passed, either enjoining creditors from pursuing their remedy at law, or a receiver is appointed, no lien attaches to such property of the debtor as may be made the subject of a judgment lien, or upon which an execution may be levied. In respect to such property as can be reached only through, or by, a suit in equity—such as equitable interests in real estate, choses in action, or other intangible property—the lien attaches upon the filing of the bill, and, in the final distribution, the equitable maxim that equality is equity prevails.

In Purdy v. Doyle, 1 Paige (N. Y.) 558, Chancellor Walworth thus states the doctrine:

"If it (the property) is such as the judgment creditors could obtain a specific or general lien on at law, they are entitled to the fruits of their superior diligence, so far as they have succeeded in getting such lien. But if the property was in such a situation that it could not be reached by a judgment at law, and the fund is raised by a decree of this court, and the creditors are obliged to come here to avail themselves of it, they will be paid upon the footing of equality only."

In Lansing v. Easton, 7 Paige (N. Y.) 364, the same chancellor said:

"The ordinary injunction upon a creditor's bill, which only operates upon the defendant, will not, of course, prevent another judgment creditor from levying upon property of the defendant which is the proper subject of levy and sale on execution, before the title of the defendant * * * is equitably divested by an order for a sequestration thereof or for the appointment of a receiver."

He further says that, unless there is a special clause therein to that effect, an injunction against the creditor will not prevent him from confessing a judgment in favor of another bona fide creditor instead of driving him to the expense of a suit at law.

In Davenport v. Kelly, 42 N. Y. 193, Ingalls, J., says:

"It is very clear that, as to personal property which is the subject of levy and sale on execution, a creditor, by an equity suit, acquires no preference, as against a judgment creditor of the debtor, until the entry of an order appointing a receiver in such equity suit. The vigilant creditor who, by his execution, seizes and sells the property of his debtor, before the appointment of a receiver in an equity action, secures a preference which the law sanctions and protects."

In Knower v. Bank, 124 N. Y. 552, 27 N. E. 247, 21 Am. St. Rep. 700, it is said:

"By the commencement of an action in equity by a judgment creditor to reach the property of his debtor, he obtains a lien upon the choses in action and equitable interests of the latter, which lien becomes effectual, upon the recovery of judgment for the relief sought. * * * This rule is not to the same extent applicable to property subject to levy and execution."

So, it is said by Mr. High:

"The receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien previously acquired in good faith. And when creditors have obtained judgments against their debtors, which are a lien upon his real estate, prior to the appointment of a receiver of the debtor's property and estate, the receiver is seized of the land subject to the lien of the judgments." Receivers, § 138; Smith's Eq. Rem. Creditors, § 222.

In Freedman's Sav. & Trust Co. v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301, Mr. Justice Matthews, reviewing the authorities, quotes with approval the language used by Chancellor Kent in M'Dermutt v. Strong, 4 Johns. Ch. (N. Y.) 687:

"Though it be the favorite policy of this court to distribute assets equally among creditors, pari passu, yet whenever a judicial preference has been

established, by the superior legal diligence of any creditor, that preference is always preserved in the distribution of assets by this court."

Justice Shepherd writes an interesting discussion of the several kinds of creditors' suits, pointing out the procedure and priorities acquired and enforced in Hancock v. Wooten, 107 N. C. 9, 12 S. E. 199, 11 L. R. A. 466.

The procedure, by which the court appointing the receiver protects liens attaching prior to the order of appointment, as pursued by the court in this case, is pointed out in Com. Roofing Co. v. North Am. Trust Co., 135 Fed. 984, 68 C. C. A. 418; 3 Street's Fed. Eq. Procedure, § 2586.

Appellants insist that the learned judge below erroneously treated plaintiff's suit as a creditor's bill, filed for the purpose of winding up and bringing to sale, under the direction of the court, the property of an insolvent corporation. They further insist that the jurisdiction of the court cannot be sustained upon that theory or construction because the plaintiff's claim had not been reduced to judgment. Whatever may have been said by the defendant corporation upon this view of the original cause, before submitting to the jurisdiction of the court, is immaterial in the disposition of this appeal. The plaintiff was clearly entitled to invoke the jurisdiction for the protection of his rights as a stockholder. It may be that, upon the bill, the injunction restraining the Granite Brick Company from executing the bonds and mortgage or otherwise incumbering its property was the only relief to which plaintiff was entitled. The allegations in the original bill and of the cross-bill disclosed a serious controversy between the managing officers of the corporation and the plaintiff. It was manifest that, until this controversy was settled it was not possible for the corporation to continue its operations; that if plaintiff's contention was sustained the company was insolvent. Recognizing this condition, the parties to the original suit stipulated that the court should proceed to administer the property and protect the rights of all parties interested. The result demonstrates the wisdom of this procedure.

Conceding that the original suit was properly treated as a creditor's bill, and that the corporation was insolvent, the authorities hold that, until a decree was passed enjoining suits, or appointing a receiver, the creditors, other than Titus, were entitled to prosecute their legal remedies for securing payment of their debts.

"A creditor of an insolvent corporation is entitled to pursue the ordinary legal and equitable remedies for the enforcement of his claims, unless he is restrained from doing so at the suit of the corporation or of other creditors. Neither the corporation, nor other creditors, would be able to prevent him from pursuing the ordinary remedies given to creditors, except by instituting proceedings for the purpose of securing a general distribution of the companies' assets, and by obtaining the appointment of a receiver, or at least a restraining order." 2 Morawetz, Priv. Corp. § 864.

[5] The learned judge was impressed with the fact that, but for the institution of the suit by appellee Titus, the corporation would have executed the bonds and mortgage, thereby depriving appellants of the opportunity to secure a judgment lien upon its property. This is doubtless true and appeals to the conscience of the chancellor to in-

voke and apply the maxim that equality is equity; but, in dealing with property capable of being subjected to legal remedies, liens, and levies, equity follows the law. While appellants' judgments were taken by default, it is not suggested that any valid defense was open to the corporation, or that they were obtained by any collusion between the creditors and the officers of the corporation, as in Rubber Co. v. Am. Oak Leather Company, 181 U. S. 434, 21 Sup. Ct. 670, 45 L. Ed. 938.

We are of the opinion that, in denying the petition of appellants to direct the payment of their judgments, after the cost from the proceeds of the sale of the real estate of the corporation, there was error. This will be certified to the end that the decree may be corrected in accordance with this opinion.

Reversed.